ORAL ARGUMENT NOT YET SCHEDULED

No. 24-1050 (and consolidated cases)

**IN THE UNITED STATES COURT OF APPEALS FOR THE DISTRICT OF COLUMBIA CIRCUIT**

COMMONWEALTH OF KENTUCKY, ET AL.,

*Petitioners*,

v.

UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, ET AL.,

*Respondents*.

# HEALTH, ENVIRONMENTAL, AND COMMUNITY GROUPS' UNOPPOSED MOTION TO INTERVENE IN SUPPORT OF RESPONDENTS

Pursuant to Federal Rule of Appellate Procedure 15(d) and D.C. Circuit Rule 15(b), Citizens for Pennsylvania's Future, Conservation Law Foundation, Natural Resources Defense Council ("NRDC"), Northeast Ohio Black Health Coalition, Rio Grande International Study Center, and Sierra Club (collectively, "Health, Environmental, and Community Groups") hereby respectfully move to intervene in support of Respondents U.S. Environmental Protection Agency ("EPA") in the above-captioned challenges to EPA's regulation titled *Reconsideration of the National Ambient Air Quality Standards for Particulate Matter*, 89 Fed. Reg.

16,202 (Mar. 6, 2024) ("Final Rule"). Pursuant to D.C. Circuit Rule 15(b), this motion also constitutes a motion to intervene in all petitions for review of the challenged Final Rule, except for any petitions that may be filed challenging the Final Rule as insufficiently stringent.

EPA and all Petitioners in these consolidated cases take no position on this motion.

## BACKGROUND

The Clean Air Act ("the Act") requires EPA to adopt and periodically update National Ambient Air Quality Standards ("air quality standards") for harmful air pollutants. 42 U.S.C. § 7409. These air quality standards must include "primary"—or "health"—standards requisite to protect public health with an adequate margin of safety, and "secondary"—or "welfare"—standards requisite to protect public welfare. *Id.* § 7409(b); *see also id.* § 7602(h) (defining "welfare"). Once in place, these standards are implemented by enforceable regulatory programs at the state and federal level sufficient to ensure that air quality will come into attainment with the standards. *Id.* §§ 7410(a) and (c), 7502.

At issue here is EPA's 2024 revision of the annual health standard for fine particulate matter ("$PM_{2.5}$"). Exposure to $PM_{2.5}$ pollution is linked to premature death, increased hospital admissions and emergency department visits, and development of chronic respiratory disease. 89 Fed. Reg. at 16,203. Furthermore,

exposure to $PM_{2.5}$ is not evenly distributed, as Black and Hispanic populations experience, "on average, higher $PM_{2.5}$ exposures and $PM_{2.5}$-related health risks than non-Hispanic White populations." *Id.* at 16,204. These disparities also include higher rates of $PM_{2.5}$ -associated hypertension and mortality. *Id.* at 16,235.

EPA's 2024 revision of the annual health standard for $PM_{2.5}$ follows its decision to reconsider a 2020 final action, which retained air quality standards that were last revised in 2012. 85 Fed. Reg. 82,684 (Dec. 18, 2020). Shortly after EPA published its 2020 final action, several parties, including many of the current Health, Environmental, and Community Groups, filed petitions for review and administrative petitions for reconsideration of that final action. *See, e.g.*, *American Lung Association, et al. v. EPA*, No. 21-1027 (D.C. Cir. 2021). Before briefing began in those cases, EPA announced in June 2021 that it was reconsidering the 2020 decision "because available scientific evidence and technical information indicate that the current standards may not be adequate to protect public health and welfare, as required by the Clean Air Act."[1]

On March 6, 2024, after going through a notice and comment process, EPA published the Final Rule revising the $PM_{2.5}$ health standard in the Federal Register.

---

[1] EPA Press Release, *EPA to Reexamine Health Standards for Harmful Soot that Previous Administration Left Unchanged* (June 10, 2021), https://www.epa.gov/newsreleases/epa-reexamine-health-standards-harmful-soot-previous-administration-left-unchanged.

89 Fed. Reg. 16,202. Among other things, EPA strengthened the annual primary $PM_{2.5}$ standard to 9 μg/$m^3$ (compared to its prior level of 12 μg/$m^3$) and retained the pre-existing 24-hour standard of 35 μg/$m^3$. *Id.* The annual standard is within the range recommended by the majority of the Clean Air Scientific Advisory Committee ("CASAC"), whose advice the Act requires EPA to consider in reviewing and revising air quality standards. 89 Fed. Reg. at 16,204.

Petitioners here seek to invalidate, weaken, delay, or vacate the Final Rule. In comments on the proposed version of the Final Rule, many of the Petitioners argued against strengthening the annual $PM_{2.5}$ standard, raising various legal and technical objections. *See, e.g.*, EPA-HQ-OAR-2015-0072-2180 (comments of Petitioners Kentucky, Texas, et al.); EPA-HQ-OAR-2015-0072-2193 (comments of Petitioner National Association of Manufacturers).

Health, Environmental, and Community Groups are national, regional, and local organizations that seek to protect people's health and wellbeing, including their members', against harm from air pollution. Many of them submitted extensive comments—arguing for stronger standards than EPA ultimately adopted—on EPA's proposal. *See* Comments of Appalachian Mountain Club, et al., EPA-HQ-OAR-2015-0072-2233. As described below, the Final Rule provides critical safeguards for Health, Environmental, and Community Groups members' health and welfare. Health, Environmental, and Community Groups and their

members have strong interests in maintaining the level of health protection provided by the revised annual $PM_{2.5}$ health standard and in ensuring that the air quality standards are timely, fully, and effectively implemented. Accordingly, they meet the standards for intervention in Petitioners' challenge pursuant to Fed. R. App. P. 15(d), as further detailed below.

## ARGUMENT

Under the Federal Rules of Appellate Procedure, a potential intervenor must file a motion to intervene "within 30 days after the petition for review" and provide "a concise statement of the interest of the moving party and the grounds for intervention." Fed. R. App. P. 15(d); *see Synovus Fin. Corp. v. Bd. of Governors of Fed. Reserve Sys.*, 952 F.2d 426, 433 (D.C. Cir. 1991). Health, Environmental, and Community Groups satisfy this standard.

In determining what constitutes appropriate grounds for intervention in cases in other postures, this Court has sometimes looked to the standard for intervention in the district courts. *See Building & Construction Trades Dep't v. Reich*, 40 F.3d 1275, 1282 (D.C. Cir. 1994) (noting that "the policies underlying intervention [in district court] may be applicable in appellate courts") (alteration in original) (quoting *Int'l Union v. Scofield*, 382 U.S. 205, 217 n.10 (1965)). Under Federal Rule of Civil Procedure 24(a)(2), a movant is entitled to intervention as-of-right whenever (1) its motion is "timely;" (2) the movant claims an "interest relating to

the … subject of the action;" (3) disposition of the action "may as a practical matter impair or impede the movant's ability to protect its interest;" and (4) the existing parties may not "adequately represent" the movant's interest. Fed. R. Civ. P. 24(a)(2); *see also Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 731 (D.C. Cir. 2003). Movants may also intervene where they have "a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). Health, Environmental, and Community Groups satisfy these standards here, if they were to apply.

## I. Health, Environmental, and Community Groups satisfy the standard for intervention.

### A. This motion is timely filed.

Petitioners filed their petition for review on March 6, 2024. Accordingly, this motion is timely filed on March 27, 2024. Fed. R. App. P. 15(d).

### B. Movants and their members have significant interests in defending the Final Rule.

Health, Environmental, and Community Groups seek to intervene to oppose Petitioners' attempts to weaken public health and environmental safeguards that benefit their members. This Court has previously allowed Health, Environmental, and Community Groups to intervene in petitions for review challenging EPA

actions under the Clean Air Act—including promulgation of air quality standards.[2] Comparable circumstances warrant a grant of intervention to Health, Environmental, and Community Groups here.

As in previous cases, Health, Environmental, and Community Groups have an interest in this action because their organizational purposes include the prevention of harmful air pollution and advocacy on behalf of those most affected by air pollution, especially the members of their organizations. *See* attached declarations. Further, Health, Environmental, and Community Groups have members who live in communities[3] with air quality that does not meet the revised annual $PM_{2.5}$ standard, and who are therefore breathing air that EPA has determined to be unhealthy. *Id.* Many of these members have health conditions that require medication and that are exacerbated by air pollution. *Id*. And many of these members find their day-to-day activities impaired by elevated levels of air pollution. *Id*.

Invalidating, weakening, or delaying implementation of the revised standard

---

[2] *See, e.g.*, Order of May 20, 2013, *National Association of Manufacturers v. EPA*, No. 13-1069 (and consolidated cases) (granting NRDC, and Sierra Club's motion to intervene in defense of EPA's decision to revise the $PM_{2.5}$ annual health standard); *American Petroleum Institute v. EPA*, 684 F.3d 1342 (D.C. Cir. 2012) (NRDC intervened in challenge to nitrogen dioxide standard).

[3] EPA, *Fine Particle Concentrations for Counties with Monitors Based on Air Quality Data from 2020 - 2022* (Feb., 2024), https://www.epa.gov/system/files/documents/2024-02/table_annual-pm25-county-design-values-2020-2022-for-web.pdf

would prolong exposure of these members to $PM_{2.5}$ levels that EPA—as well as other medical experts—has determined are unsafe to breathe and would harm Health, Environmental, and Community Groups' members' health and welfare interests. *Id.* Moreover, as Health, Environmental, and Community Groups' comments on the proposed standards argued—based on substantial scientific evidence—air quality standards even more protective than those that were ultimately adopted were warranted to protect people's health. *E.g.*, Comments of Appalachian Mountain Club, *et al.*, EPA-HQ-OAR-2015-0072-2233. For this reason, and because there is no safe threshold for $PM_{2.5}$ exposure, reductions in $PM_{2.5}$ pollution will benefit residents (including members) in downwind areas even if they are designated as having met the air quality standard.

The health interests of Health, Environmental, and Community Groups' members are of central importance to the underlying Clean Air Act provisions governing EPA's adoption and revision of the air quality standard. Those provisions require EPA to adopt health standards "requisite to protect the public health," "allowing an adequate margin of safety." 42 U.S.C. § 7409(b)(1). The Supreme Court has unanimously ruled that EPA must base these health standards *solely* on public health considerations. *Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 465 (2001).

Because the Clean Air Act grants this Court exclusive jurisdiction to review

the challenged rules, this Court is the only venue where Health, Environmental, and Community Groups may defend the validity of these air quality standards. 42 U.S.C. § 7607(b)(1), (e). Health, Environmental, and Community Groups' interest in preventing weakening of health protections for their members under the Clean Air Act will be prejudiced if they are not allowed to intervene. *See Crossroads Grassroots Policy Strategies v. FEC*, 788 F.3d 312, 317 (D.C. Cir. 2015) (intervention warranted where petitioners' challenge would "remove" the "benefit[s]" of the rule).

For the foregoing reasons, Health, Environmental, and Community Groups have a clear "interest" in this matter within the meaning of Federal Rule of Appellate Procedure 15(d). Further, to the extent that this Court has required and continues to require respondent-intervenors to do so, the injuries Health, Environmental, and Community Groups' members would suffer from a weakening or reversal of the Final Rule are more than sufficient to satisfy the requirements of Article III standing.[4] *See, e.g.*, *Friends of the Earth v. Laidlaw Envtl. Servs.*, 528 U.S. 167, 183 (2000) (environmental group has standing to enforce pollution limits

[4] Any weakening, delay, or vacatur of the rule would injure Health, Environmental, and Community Groups' members and organizational interests. Thus, Health, Environmental, and Community Groups would satisfy all standing requirements. *See Crossroads*, 788 F.3d at 317 (holding that a movant-intervenor has standing to defend a challenged regulation when it "benefits from [the] agency action, the action is then challenged in court, and an unfavorable decision would remove the [movant's] benefit").

where members have reasonable concern about adverse effects of pollution in area they use); *Sierra Club v. EPA*, 129 F.3d 137, 139 (D.C. Cir. 1997) (environmental group with members in affected areas has standing to challenge weakening of Clean Air Act requirements for such areas).

Health, Environmental, and Community Groups, however, note that because they seek to intervene in support of the respondent, they are thus not affirmatively invoking the Court's jurisdiction. *See Va. House of Delegates v. Bethune-Hill*, 139 S. Ct. 1945, 1951 (2019) (stating that "it was not … incumbent on [a party] to demonstrate its standing" when it participated "as an intervenor in support of the … Defendants" or "as an appellee" on appeal "[b]ecause neither role entailed invoking a court's jurisdiction"). In an appropriate case, Health, Environmental, and Community Groups request that this Court clarify intervenor-respondents' obligations regarding standing in light of recent Supreme Court case law.

## II. Health, Environmental, and Community Groups' interests may not be adequately represented by EPA.

Health, Environmental, and Community Groups satisfy their "minimal" burden to show that Respondents' representation "'may be' inadequate." *Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n.10 (1972). Movants need not "predict now the specific instances" in which conflicts may arise, *NRDC v. Costle*, 561 F.2d 904, 912 (D.C. Cir. 1977); a "potential conflict," *Dimond v. Dist. of Columbia*, 792 F.2d 179, 193 (D.C. Cir. 1986); or a "possibility of disparate

interests" is sufficient, *Costle*, 561 F.2d at 912.

As this case now stands, the Court will only hear EPA's arguments against challenges to the Final Rule. But as this court "ha[s] often concluded … governmental entities do not adequately represent the interests of aspiring intervenors." *Fund for Animals v. Norton*, 322 F.3d 728, 736 (D.C. Cir. 2003); *see also Costle*, 561 F.2d at 913 (holding that industry intervenors' interests may not be adequately represented by EPA and that intervention as a matter of right is thus justified). That is especially true here, where Health, Environmental, and Community Groups submitted comments arguing for air quality standards even more protective than those ultimately adopted by EPA. Indeed, Health, Environmental, and Community Groups have frequently disagreed with—and challenged in rulemaking comments and court proceedings—EPA's actions and inaction under the Clean Air Act, including on air quality standards.[5]

Further, "skeptic[ism] [regarding] government entities serving as adequate advocates for private parties" is especially warranted here, given EPA's decision to reconsider these air quality standards after initially refusing to revise them in 2020. *Crossroads*, 788 F.3d at 321. It was only after a change in presidential

[5] *See, e.g.*, *Murray Energy Corp. v. EPA*, 936 F.3d 597 (D.C. Cir. 2019) (challenge by Sierra Club to ozone air quality standards); *S. Coast Air Quality Mgmt. Dist. v. EPA*, 472 F.3d 882 (D.C. Cir. 2006) (challenge by NRDC, Sierra Club, and others to EPA rules to implement ozone air quality standard).

administrations, as well as the filing of a petition for review and an administrative petition for reconsideration by Health, Environmental, and Community Groups, that EPA reversed itself and strengthened these air quality standards. Here, the government may change position or make litigation concessions with which Health, Environmental, and Community Groups disagree. For example, in *Environmental Defense v. Duke Energy Corp.*, 549 U.S. 561 (2007), the United States declined to seek certiorari from an adverse court of appeals decision. Environmental intervenors petitioned for certiorari and eventually prevailed on the merits, despite the United States switching sides to align itself with Duke Energy. *Id.* at 582. It is possible that EPA may take positions here regarding stays, abeyances, remedies, or rehearing that would harm Health, Environmental, and Community Groups' members.

Health, Environmental, and Community Groups' interests and experience provide them with a unique and distinctive perspective on the issues at stake. As a result, they respectfully submit that the Court's adjudication will be assisted by hearing from non-governmental experts and advocates of the Clean Air Act's public health protections. And consistent with the Circuit's rules, Health, Environmental, and Community Groups will "focus on points not made or adequately elaborated upon in ... [EPA's] brief, although relevant to the issues before this court." D.C. Cir. R. 28(d)(2).

## CONCLUSION

For the foregoing reasons, Health, Environmental, and Community Groups respectfully request that the Court grant them leave to intervene as respondents in support of EPA in all challenges to the Final Rule, except for any petitions that may be filed challenging the Final Rule as insufficiently stringent.

Dated: March 27, 2024

Respectfully submitted,


*/s/ Marvin C. Brown IV*
Seth L. Johnson
Marvin C. Brown IV
Earthjustice
1001 G Street NW, Suite 1000
Washington, DC 20001
(202) 797-5245
(202) 794-5355
sjohnson@earthjustice.org
mcbrown@earthjustice.org

*Counsel for Natural Resources Defense Council, Northeast Ohio Black Health Coalition, Rio Grande International Study Center, and Sierra Club*

*/s/ Shaun A. Goho (w/permission)*
Shaun A. Goho
Hayden Hashimoto
Clean Air Task Force
114 State Street, 6th Floor
Boston, MA 02109
(617) 678-2516
sgoho@catf.us
hhashimoto@catf.us

*Counsel for Citizens for Pennsylvania's Future and Conservation Law Foundation*

*/s/ John Walke (w/permission)*
John Walke
Emily Davis
Natural Resources Defense Council
1152 15th Street, NW, Suite 300
Washington, DC 20005
(202) 289-6868

jwalke@nrdc.org
edavis@nrdc.org

*Counsel for Natural Resources Defense Council*

**CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Pursuant to Federal Rule of Appellate Procedure and D.C. Circuit Rule 26.1, Movants Citizens for Pennsylvania's Future, Conservation Law Foundation, Natural Resources Defense Council, Northeast Ohio Black Health Coalition, Rio Grande International Study Center, and Sierra Club state that they are non-profit environmental organizations without any parent corporation or stock.

Dated: March 27, 2024

*/s/ Marvin C. Brown IV*
Marvin C. Brown IV

## CERTIFICATE OF PARTIES

Pursuant to D.C. Circuit Rule 27(a)(4) and 28(a)(1)(A), I certify that the parties to this case are set forth below.

Petitioners: Kentucky, West Virginia, Alabama, Alaska, Arkansas, Florida, Georgia, Idaho, Indiana, Iowa, Kansas, Louisiana, Mississippi, Missouri, Montana, Nebraska, North Dakota, Ohio, Oklahoma, South Carolina, South Dakota, Tennessee, Utah, and Wyoming, in No. 24-1050; Chamber of Commerce of the United States of America, American Chemistry Council, American Forest & Paper Association, American Petroleum Institute, American Wood Council, National Association of Manufacturers, National Mining Association, and Portland Cement Association, in No. 24-1051; Texas and the Texas Commission on Environmental Quality, in No. 24-1052; and President of the Arizona State Senate Warren Petersen, Speaker of the Arizona House of Representatives Ben Toma, and Arizona Chamber of Commerce and Industry, in No. 24-1073.

Respondents: United States Environmental Protection Agency ("EPA") and Michael S. Regan, in his official capacity as Administrator of the EPA.

Intervenors: There are no other intervenors or movant-intervenors in No. 24-1050 (and consolidated cases) at the time of this filing.

Amici Curiae: No parties have sought amici curiae status at the time of this filing.

Dated: March 27, 2024

*/s/ Marvin C. Brown IV*
Marvin C. Brown IV

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT

Counsel hereby certifies, in accordance with Federal Rule of Appellate Procedure 32(g)(1), that the foregoing motion contains 2,584 words, as counted by counsel's word processing system, and thus complies with the 5,200 word limit. *See* Fed. R. App. P. 27(d)(2)(A).

Further, this document complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5) and (a)(6) because this document has been prepared in a proportionally spaced typeface using **Microsoft Word for Microsoft 365** using **size 14 Times New Roman** font.

Dated: March 27, 2024

*/s/ Marvin C. Brown IV*
Marvin C. Brown IV